UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMY MARIE HARRISON-HOOD,

      Plaintiff,

v.                             Case No.:  8:21-cv-695-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**OPINION AND ORDER**

      Plaintiff Amy Marie Harrison-Hood filed a Complaint on March 23, 2021. (Doc. 1).  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits.  The Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions.  (Doc. 22).  For the reasons set forth herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

      The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.      Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on September 25, 2018, alleging a disability onset date of July 20, 2018. (Tr. at 16).[1]  Plaintiff's claim was denied initially on January 18, 2019, and upon reconsideration on March 1, 2019. (*Id*.). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Linda S. Harris Crovella held a hearing on June 16, 2020. (*Id*. at 48-81; *see also* Tr. at 16). The ALJ issued an unfavorable decision on April 23, 2020. (*Id*. at 16-38). The Appeals Council subsequently denied Plaintiff's request for review on January 27, 2021. (*Id.* at 1-3). Plaintiff then filed her Complaint with this Court on March 23, 2021, (Doc. 1), and

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017). The new regulations apply in Plaintiff's case because Plaintiff filed her claim after March 27, 2017.

the parties consented to proceed before a United States Magistrate Judge for all purposes, (Docs. 15, 17).  The matter is, therefore, ripe for the Court's review.

## III.      Summary of the Administrative Law Judge's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023.  (Tr. at 18).  At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 20, 2018, the alleged onset date.  (*Id.*).  At step two, the ALJ determined that Plaintiff has the following severe impairments:  "dysfunction of major joints, right shoulder and left knee; migraines; and obesity (20 [C.F.R. §] 404.1520(c))."  (*Id.*).

At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525[,] and 404.1526)." (*Id.* at 21).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 [C.F.R. §] 404.1567(b), except she can frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; cannot tolerate concentrated exposure to fumes, odors, dust, gases, or other pulmonary irritants; can work in office-level lighting, but cannot tolerate brighter hospital-level lighting; can occasionally reach overhead with the right upper extremity; and she must alternate from sitting for one hour to standing in place for five minutes while remaining productive.

(*Id.* at 23). The ALJ also determined that Plaintiff "is capable of performing past relevant work as a dispatcher, payroll administrator, and personnel clerk" because "[t]his work does not require the performance of work-related activities precluded by the claimant's [RFC] (20 [C.F.R. §] 404.1565)." (*Id.* at 37).

For these reasons, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 20, 2018, through the date of this decision (20 [C.F.R. §] 404.1520(f))." (*Id.*).

## IV.      Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

## V.     Analysis

On appeal, Plaintiff raises four issues. As stated by Plaintiff, the issues are:

1.     Did the ALJ properly account for Plaintiff's migraine headaches in the RFC in light of the record as a whole, including the opinion of the treating neurologist;

2.     Did the ALJ err by finding that Plaintiff's medically determinable impairments of depressive disorder and anxiety are not "severe impairments" and resulted in no mental limitations of Plaintiff's ability to work;

3.     Is the ALJ's credibility assessment generally defective because of the above errors and specifically so because of her failure to consider Plaintiff's stellar work history in her assessment; and

4.     Whether the decision in this case, by an ALJ and Appeals Council AAJ deriving authority from the Commissioner who was not constitutionally appointed, is constitutionally defective, requiring remand.

(Doc. 22 at 8, 25, 35, 41).  The Court finds it appropriate to address the issues in a more logical order than presented by the parties.

Accordingly, the Court first addresses Plaintiff's fourth issue – whether the decision here is constitutionally defective, requiring remand.  Next, the Court considers Plaintiff's first issue – whether the ALJ erred in his assessment of Plaintiff's migraines in the RFC determination.  Then, because the Court finds that Plaintiff's first issue necessitates remand, the Court finds that any ruling on Plaintiff's remaining issues is premature at this time.

## A.     Whether 42 U.S.C. § 902(a)(3) Necessitates a Rehearing.

Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3), (the "removal provision").  Under § 902(a)(3), the SSA's Commissioner is appointed to a six-year term and may not be removed from office by the President without a showing of cause.  *See* 42 U.S.C. § 902(a)(3).

Plaintiff essentially argues that the § 902(a)(3) removal provision provides unconstitutional tenure protection to the Commissioner of the SSA, violates the

separation of powers, and, therefore, the SSA's structure is constitutionally invalid. (*See* Doc. 22 at 41-42 (citing 42 U.S.C. § 902(a)(3); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020))).  To that end, Plaintiff impliedly asserts that Commissioner Andrew Saul was subject to the removal provision's allegedly unconstitutional tenure protection and, thus, any actions taken by him or pursuant to his authority were unconstitutional.  (*See id.*).  For example, Plaintiff argues that, because Commissioner Saul delegated his authority to the ALJ who issued a decision in Plaintiff's case and to the Appeals Council Judges, Plaintiff's claim was adjudicated by individuals who "had no lawful authority to do so."  (*See id.* at 42 (citations omitted)).  Plaintiff also asserts that her claim was decided under "a presumptively inaccurate legal standard" because Commissioner Saul issued regulations under which Plaintiff's application was decided.  (*Id.*).

The Commissioner "*agree[s]* that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause," (*id.* at 43 (emphasis added) (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))), but disagrees that the removal provision necessitates a remand of Plaintiff's case, (*id.* at 43-44 (citation omitted)). Specifically, the Commissioner contends that Plaintiff cannot show a nexus between 42 U.S.C. § 902(a)(3)'s removal provision and any alleged harm suffered by Plaintiff. (*See id.* at 44-51 (citing *Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021))).

The Commissioner raises two arguments in support of this contention.  First, the Commissioner argues that because ALJ Linda S. Harris Crovella served under a ratification of her appointment by former Acting Commissioner Nancy Berryhill, there was no connection between the ALJ's decision and the removal provision.  (*See id.* at 45-47 (citations omitted)).  Because Acting Commissioner Berryhill was not subject to any tenure protection under 42 U.S.C. § 902(a)(3), the Commissioner asserts that any potential nexus between the removal provision and the decision in Plaintiff's case was severed.  (*See id.*).  Second, even if Plaintiff's case were decided under the authority of a Commissioner subject to the removal provision, the Commissioner argues that Plaintiff "cannot show that the removal restriction 'inflict[ed] compensable harm' on her."  (*See id.* at 48-51 (alteration in original) (citing *Collins*, 141 S. Ct. at 1789)).

The Commissioner next argues that Plaintiff's rehearing request should be denied under the harmless error doctrine, (*id.* at 51-52 (citations omitted)), the *de facto* officer doctrine, (*id.* at 52-53 (citations omitted)), the rule of necessity (*id.* at 53-54 (citations omitted)), and broad prudential considerations, (*id.* at 54-55 (citations omitted)).

By way of reply, Plaintiff addresses several arguments posited by Defendant. (*See id.* at 55-64).  First, Plaintiff asserts that she "has standing to bring this action" because she "sustained a sufficient injury [when she] receive[d] an adverse determination on her disability claim from both the Commissioner's ALJ and the [Appeals Council]," despite that the ALJ and Appeals Council "had no valid

delegation of authority to issue rulings." (*Id.* at 56-57).  Second, Plaintiff reiterates her argument that under *Collins v. Yellen*, 141 S. Ct. 1761, 1778-89 (2021), the removal restriction at issue is unconstitutional and implicates separations of powers. (*Id.* at 57-58 (citations omitted)).  Third, Plaintiff argues that the Commissioner "fail[ed] to respond to her assertions on the illicit actions of the [Appeals Council]," and, therefore, the Court should remand by finding that the Commissioner abandoned the issue.  (*See id.* at 58-59 (citations omitted)).  Fourth, Plaintiff argues that the Commissioner cannot rely on the fact that the ALJ "was properly appointed by an Acting Commissioner," because "[t]he ALJ's or [Appeals Council] judge's appointment is entirely distinct from their exercise of authority." (*Id.* at 60).  Fifth, Plaintiff argues that she need not show either causation or harm because when "government actors exercis[e] power they d[o] not lawfully possess, . . . causation and harm should be presumed." (*Id.* at 60-61 (citations omitted)).  Sixth, Plaintiff contends that harmless error cannot apply in this case.  (*Id.* at 61-62).  Seventh, Plaintiff argues that the *de facto* officer doctrine does not apply to basic constitutional protections.  (*Id.* at 62 (citations omitted)).  Eighth, Plaintiff asserts that the rule of necessity should not apply because any necessity was caused by the government's own unconstitutional behavior.  (*Id.*).  Finally, Plaintiff argues that the Commissioner's "broad prudential concerns" argument lacks merit and "is merely SSA's invitation to this Court to make up law where none exists." (*See id.* at 63 (citations omitted)).

On June 29, 2020, in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the United States Supreme Court held that a "for-cause" removal restriction on the President's executive power to remove the Consumer Financial Protection Bureau's ("CFPB") director violated constitutional separation of powers, but that the removal provision was severable such that the other provisions relating to the CFPB's structure and duties "remained fully operative without the offending tenure restriction." *Seila L. LLC*, 140 S. Ct. at 2209 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010)).

Thereafter, on June 23, 2021, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the United States Supreme Court held that the Federal Housing Finance Agency ("FHFA") director's statutory for-cause removal protection was similarly unconstitutional. *Collins*, 141 S. Ct. at 1783. The Court also distinguished the unconstitutional removal provision in *Collins* from similar appointment provisions, *see, e.g.*, *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), noting that:

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.

*Id.* at 1787 (emphasis in original). The Court did not, however, rule out the potential that an unconstitutional removal provision could "inflict compensable harm." *Id.* at

10

1788-89.  To that point, the *Collins* Court listed examples of how compensable harms might be identified, stating:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal.  Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way.  In those situations, the statutory provision would clearly cause harm.

*Id.*

In this matter, the Commissioner agrees with Plaintiff that 42 U.S.C. § 902(a)(3) is unconstitutional because it violates the separation of powers.  (Doc. 22 at 43 (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))).  However, despite the parties' agreement, the Court need not determine the constitutionality of 42 U.S.C. § 902(a)(3)'s removal provision.  In short, even assuming *arguendo* that the removal provision is unconstitutional, it would not necessitate a rehearing of Plaintiff's claim because the provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff. Accordingly, the Court assesses whether the removal provision necessitates a rehearing of Plaintiff's claim, assuming *arguendo* that the provision is unconstitutional.

Plaintiff essentially contends that the allegedly unconstitutional nature of section 902(a)(3) automatically voids the Social Security Administration's decision in

this case.  (*See* Doc. 22 at 41-42, 55-64).  On the other hand, the Commissioner raises a host of arguments as to why Plaintiff's rehearing request should be denied.  (*See id.* at 43-55).

Here, the Court agrees with the Commissioner's arguments and finds a rehearing is not required based solely on the allegedly unconstitutional removal provision for two reasons:  (1) the removal provision is severable from the remainder of the Social Security Act; and (2) Plaintiff has failed to show how the allegedly unconstitutional removal provision harmed her.

In the first place, the Court finds that the Commissioner did not abandon or waive her argument as to the Appeal Council's decision.  In her motion, Plaintiff includes a singular reference to the constitutionality of the Appeals Council's decision by perfunctorily stating, "[a]ll this is just as true with respect to SSA's Appeals Council judges." (*Id.* at 42).  Notably, this statement is neither supported by citations to relevant authority nor persuasive argument.  (*See id.*).  Thus, if anything, Plaintiff failed to sufficiently raise a challenge to the constitutionality of the Appeals Council's decision, such that her is waived.  *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 n.2 (11th Cir. 2016) (finding that a plaintiff's perfunctory argument was abandoned).  In any event, the Court considers Plaintiff's arguments as to both the ALJ and the Appeals Council below.

The Court in *Seila Law* noted that "one section of a statute may be repugnant to the Constitution without rendering the whole act void." *See Seila L. LLC*, 140 S. Ct. at 2208. Based on this principle, the Court is not persuaded by Plaintiff's broad argument that 42 U.S.C. § 902(a)(3)'s removal provision divests the Commissioner of all authority under the Social Security Act or renders *all* of the Commissioner's actions "presumptively inaccurate." (*See* Doc. 22 at 42). Rather, like the offending provision in *Seila Law*, the Court finds that 42 U.S.C. § 902(a)(3) can be severed from the remainder of the Act because the SSA can continue to fully function without the presence of the allegedly unconstitutional provision. *See Seila L. LLC*, 140 S. Ct. at 2209; *see also Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at \*5 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted,* 2022 WL 61217 (M.D. Fla. Jan. 6, 2022) (citations omitted) (finding that remand based on the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted based, in part, on its severability from the remainder of the Act). Thus, the Court finds that remand for a rehearing on this issue is not warranted.

Moreover, while the *Collins* Court recognized the potential that an unconstitutional removal provision could "inflict compensable harm," *see Collins*, 141 S. Ct. at 1788-89, the Court has found no evidence suggesting that there is a connection between the removal provision and any possible harm to Plaintiff. For example, Plaintiff has not shown that the President could not remove Mr. Saul as a result of the alleged unconstitutional tenure, undermining the existence of a nexus between the provision and the unfavorable decision. Plaintiff fails to show that

absent the alleged unconstitutional provision, Plaintiff's claim would have been decided differently at either the ALJ or the Appeals Council level.  Indeed, Plaintiff has pointed to no portion of either the ALJ's decision or the decision of the Appeals Council that she contends would have been decided differently but for the alleged unconstitutional provision.  Finally, Plaintiff's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner Berryhill.  Because former Acting Commissioner Berryhill was not subject to 42 U.S.C. § 902(a)(3)'s tenure protection, any argument that a nexus exists between § 902(a)(3) and a compensable harm to Plaintiff is further strained.

Furthermore, while the United States Supreme Court has not addressed this issue directly, Justice Kagan forecasted its outcome in *Collins*:

> [T]he majority's approach should help protect agency decisions that would never have risen to the President's notice.  Consider the hundreds of thousands of decisions that the [SSA] makes each year.  The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block . . . [b]ut given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone.  That makes sense. . . .  When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

*See id.* at 1802 (Kagan, J., concurring).  Justice Kagan's reasoning supports the Court's conclusion that there is no evidence in the instant case to suggest that a nexus exists between § 902(a)(3) and any compensable harm to Plaintiff.

For these reasons, even assuming *arguendo* that 42 U.S.C. § 902(a)(3)'s removal provision is unconstitutional, the Court finds that the removal provision does not necessitate remand or a rehearing of Plaintiff's claim. *See Seila L. LLC*, 140 S. Ct. 2183; *Collins*, 141 S. Ct. 1761; *see also Tibbetts*, 2021 WL 6297530, at *5, *report and recommendation adopted,* 2022 WL 61217 (holding that remand based on the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted); *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *4 (M.D. Fla. Nov. 23, 2021) (finding that a plaintiff had failed to state a claim upon which relief could be granted because the plaintiff could not establish that the Acting Commissioner's unconstitutional tenure protection caused compensable harm).

## B.   Whether the ALJ Properly Considered Plaintiff's Migraines in Determining Plaintiff's RFC.

Plaintiff argues that the ALJ failed to properly consider the evidence of record related to her severe migraines impairment and, as a result, improperly omitted migraine limitations from the RFC.  (*See* Doc. 22 at 8-17).  Specifically, Plaintiff contends that the ALJ's persuasiveness determination for Dr. Henkel's opinion was not supported by substantial evidence and did not permit meaningful judicial review because, *inter alia*, the ALJ incorrectly found that Dr. Henkel had not seen Plaintiff every three months since May 1, 2015.  (*Id.* at 12 (citing Tr. at 29)).  Plaintiff asserts that the ALJ's finding was incorrect and that Dr. Henkel "regularly treated Plaintiff at the level of frequency reported."  (*Id.* (emphasis omitted) (citing Tr. at 540, 544, 549, 553, 557, 561, 565, 569, 573, 577, 581, 585, 588, 591, 594, 597, 600, 693, 698,

702, 706)).  Plaintiff also notes that "[a]lthough the record does not contain any evidence from Dr. Henkel prior to January 2016, a review of that visit shows that it was a follow-up visit and it referenced her most recent visit as being in [November] 2015.  (*Id.* at 12, n.19 (citing Tr. at 600)).  In sum, Plaintiff asserts, *inter alia*, that the ALJ failed to properly determine the persuasiveness of Dr. Henkel's medical opinion, which caused the ALJ to improperly omit limitations recommended by Dr. Henkel from the RFC.  (*See id.* at 15-16).  Thus, Plaintiff contends that remand is warranted for the ALJ to reconsider her migraine headache RFC limitations.  (*See id.*).

In response, the Commissioner contends that the revised regulations apply to Plaintiff's claim and that, under the revised regulations, the ALJ sufficiently considered the supportability and consistency of Dr. Henkel's medical opinion in finding it unpersuasive.  (*See id.* at 17-24 (citations omitted)).  The Commissioner summarizes the portions of Dr. Henkel's opinion that the ALJ found unsupported and internally inconsistent.  (*See id.*).  Yet the Commissioner does not address the ALJ's consideration of Dr. Henkel's treating relationship with Plaintiff.  (*See id.*).  In sum, the Commissioner contends that the ALJ's persuasiveness determination as to Dr. Henkel's opinion is supported by substantial evidence and, in turn, the ALJ's RFC determination for Plaintiff's migraine headache limitations is supported by substantial evidence.  (*See id.*).

By way of reply, Plaintiff argues that the Commissioner did not dispute that "the record demonstrates that Dr. Henkel regularly treated Plaintiff at the frequency

he reported, in direct contrast to the ALJ's rationale for rejecting [Dr. Henkel's] opinion." (*Id.* at 24-25 (citing Tr. at 29)).  Plaintiff asserts that this error, combined with the ALJ's failure to sufficiently explain her persuasiveness determination, frustrates meaningful judicial review of the decision.  (*See id.* at 25).

The Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Plaintiff filed her claim on September 25, 2018, (Tr. at 16), the revised regulations apply, *see* 20 C.F.R. § 404.1520c.  The regulations require that an ALJ apply the same factors in considering opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions.  20 C.F.R. § 404.1520c(a).  In contrast, under Eleventh Circuit precedent, the "treating source rule" requires the ALJ to afford "[t]he opinion of a treating physician . . . substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips*, 357 F.3d at 1240 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). However, the Eleventh Circuit recently held in a published opinion that the Social Security Administration's 2017 revised regulations abrogate the Eleventh Circuit's treating source rule.  *See Harner v. Soc. Sec. Admin., Comm'r*, No. 21-12148, 2022 WL 2298528, at *2 (11th Cir. June 27, 2022).  Accordingly, the revised regulations, rather than the Eleventh Circuit's treating source rule, apply in this action.  *See id.*

Under the revised regulations, as to each medical source, the ALJ must consider:  (1) supportability; (2) consistency; (3) relationship with the claimant;

(4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain how those two factors are considered.  *See* 20 C.F.R. § 404.1520c(b)(2).  In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source.  20 C.F.R. § 404.1520c(b)(1).  The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.  We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1).

Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).  Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6,

2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

When the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the Court would have reached a contrary result as the ALJ and even if the Court finds that "the evidence preponderates against" the Commissioner's decision. *See Edwards*, 937 F.2d at 584 n.3.

Here, Plaintiff argues, *inter alia*, that the ALJ erred in her evaluation of persuasiveness of Dr. Henkel's opinion. (*See* Doc. 22 at 12). In response, the Commissioner contends that the ALJ properly found that Dr. Henkel's opinion is neither supported by his own findings nor consistent that the other evidence of record. (*See id.* at 20-23).

Dr. Henkel's medical opinion, a Treating Source Statement dated January 21, 2020, explains that: (1) Dr. Henkel has treated Plaintiff every three months since May 1, 2015; (2) Plaintiff suffers from "chronic migraines [and] fibromyalgia;" and (3) Plaintiff will miss more than four days of work per month as a result of her impairments. (*See* Tr. at 660-63). In considering the persuasiveness of Dr. Weisman's opinion, the ALJ considered that "[Dr. Henkel] not[ed] he had seen [Plaintiff] every three months since May 1, 2015, a duration which is not supported by the evidence provided." (*Id.* at 29 (citing Tr. at 540-613, 692-729)). While considering Dr. Henkel's opinion that Plaintiff would be absent from work for more than four days every month, the ALJ noted that Dr. Henkel "only reportedly saw [Plaintiff] once every three months." (*Id.*). The ALJ also considered that Dr. Henkel

cited to his "[h]istory" with Plaintiff in support of his opinions.  (*Id.*).  Additionally, the ALJ compared other portions of Dr. Henkel's opinion to the medical evidence of record.  (*Id.* at 29-30 (citations omitted)).  The ALJ concluded that "[a]lthough [Dr. Henkel] supported his opinion in part, he did not fully support and explain his opinion, which was at times internally inconsistent, and his opinion is not entirely consistent with the longitudinal medical evidence."  (*Id.* at 29).

The Court finds that the ALJ erred in her determination of the persuasiveness of Dr. Henkel's medical opinion.  (*See id.* at 29-30).  Even though the ALJ was not required to articulate her consideration of Dr. Henkel's treating relationship with Plaintiff, *see* 20 C.F.R. § 404.1520c(b)(3), here, the ALJ expressly highlighted Dr. Henkel's statement that he had treated Plaintiff every three months since May 2015, (Tr. at 29.  In considering Dr. Henkel's statement in support of his medical opinion, the ALJ found it was "not supported by the evidence provided."  (*Id.* (citing Tr. at 540-613, 692-729)).  Upon review of the record, however, the Court finds that the ALJ was incorrect.  (*See id.* at 540, 544, 549, 553, 557, 561, 565, 569, 573, 577, 581, 585, 588, 591, 594, 597, 600, 616, 693, 698, 702, 706).

More particularly, in contrast to the ALJ's finding, the record shows that Dr. Henkel began treating Plaintiff in 2015.  (*See id.* at 60 (Plaintiff testifies that she began receiving Botox injections with Dr. Henkel in May 2015), 600 (a January 7, 2016 record from Dr. Henkel noting that Plaintiff was last treated by Dr. Henkel on November 5, 2015), 616 (a Mental Status Report from a psychological consultative examiner noting that Dr. Henkel diagnosed Plaintiff with migraine headaches in

2015)).  Additionally, the record reveals that Dr. Henkel's treatment of Plaintiff continued at a frequency of roughly once every three months beginning in May 2015. (*See id.* at 60 (Plaintiff's testimony that she began treatment in May 2015), 600 (a January 7, 2016 visit referencing a November 5, 2015 visit), 594 (a February 4, 2016 visit), 588 (an April 28, 2016 visit), 585 (a July 21, 2016 visit), 591 (an October 13, 2016 visit), 581 (a November 23, 2016 visit), 577 (a January 5, 2017 visit), 573 (a March 30, 2017 visit), 569 (a June 22, 2017 visit), 565 (a September 14, 2017 visit), 561 (a December 7, 2017 visit), 557 (a March 1, 2018 visit), 553 (a May 14, 2018 visit), 549 (a May 24, 2018 visit), 544 (a July 9, 2018 visit), 540 (a November 20, 2018 visit), 706 (a February 28, 2019 visit), 702 (a May 30, 2019 visit), 698 (an October 7, 2019 visit), 693 (a November 7, 2019 visit), 58 (Plaintiff's testimony that she was scheduled to attend a February 6, 2020 appointment, but "did not have the money for it")).  Thus, the ALJ's finding on Dr. Henkel's treating relationship with Plaintiff, (*see id.* at 29), is not supported by substantial evidence because it fails to recognize the true duration, frequency, and extent of the treatment relationship, (*see id.* at 60, 600, 594, 588, 585, 591, 581, 577, 573, 569, 565, 561, 557, 553, 549, 544, 540, 706, 702, 698, 693, 58, 616).

Moreover, the Court finds that the ALJ's error is not harmless.  While the ALJ relied on additional evidence in assessing the persuasiveness of Dr. Henkel's medical opinion, (*see id.* at 29-30 (citations omitted)), it is obvious that the ALJ's basis for finding Dr. Henkel's opinion unpersuasive rests, at least in part, on the ALJ's mistaken belief that Dr. Henkel did not regularly treat Plaintiff every three

months beginning in May 2015, (*see id.* at 29).  If the ALJ had known that Dr. Henkel's treating relationship was as extensive as he stated in his medical opinion, the ALJ may have found Dr. Henkel's opinion persuasive.  This finding, in turn, could have resulted in the ALJ incorporating additional limitations in the RFC determination, which may have impacted the rest of the ALJ's analysis.  As a result, the Court finds that the ALJ's error in assessing the persuasiveness of Dr. Henkel's opinion is harmful.

In sum, the Court finds that the ALJ's finding that Dr. Henkel overstated his treatment relationship with Plaintiff, when the record of evidence confirms Dr. Henkel's statement, (*see* Tr. at 58, 60, 600, 594, 588, 585, 591, 581, 577, 573, 569, 565, 561, 557, 553, 549, 544, 540, 706, 702, 698, 693, 616), is clearly an error. Additionally, the Court finds that the ALJ's error is harmful.  Accordingly, the Court finds that the ALJ's decision is due to be remanded.

### C.   Plaintiff's Remaining Arguments.

Plaintiff's remaining arguments focus on several issues that cannot be resolved until it is clear to the Court that the ALJ properly considered the opinion evidence of record, including properly considering Dr. Henkel's opinion.  Indeed, a re-evaluation of the persuasiveness of Dr. Henkel's opinion may lead the ALJ to find the opinion persuasive and may impact the assessment of Plaintiff's subjective allegations and the other medical evidence of record.  Moreover, a proper consideration of Dr. Henkel's opinion may also affect other elements of the ALJ's decision.  As a result, the Court finds that any ruling on Plaintiff's remaining arguments is premature at this time.

Upon remand, the ALJ must re-evaluate the entire medical evidence of record in evaluating Plaintiff's case.

## VI.     Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds that the ALJ's decision is not supported by substantial evidence. Accordingly, the Court **ORDERS** that:

1.    The decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.    On remand, the Commissioner must:

      (1) Properly consider the persuasiveness of Dr. Henkel's medical opinion and (2) re-evaluate all evidence of record.

3.    Any application for fees, costs, or expenses must comply with the Court's Standing Order on Management of Social Security Cases, *In re Administrative Orders of the Chief Judge*, Case No. 3:21-mc-1-TJC, Doc. 43 (Dec. 7, 2021).

4.    The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Tampa, Florida on September 26, 2022.

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties